AO 106A  (08/18)  Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT

for the

District of Columbia

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched* | ) | |
| *or identify the person by name and address)* | ) | Case No. 20-sc-839 |
| INFORMATION ASSOCIATED WITH APPLE ID | ) | |
| TIPTJD@GMAIL.COM  @GMAIL.COM; THAT IS STORED | ) | |
| AT PREMISES CONTROLLED BY APPLE INC., | ) | |
| PURSUANT TO 18 U.S.C. 2703 AND 3512 | ) | |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A  incorporated herein and included as part of this Application for a Search Warrant.

located in the　　　　Northern　　　　District of　　　　California　　　　, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B incorporated herein and included as part of the attached Affidavit.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §2251; | Sexual exploitation of children, Production of child pornography |
| 18 U.S.C. §2252(a)(2) | Distribution of Child Pornography |

The application is based on these facts:

See Attached Affidavit in Support of Search Warrant.

☐ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Alix Skelton, Special Agent, Federal Bureau of Investigation
_____
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

_____telephone_____ *(specify reliable electronic means)*.

Date: 04/17/2020
_____
*Judge's signature*

City and state:  Washington, DC

Deborah A. Robinson, U.S. Magistrate Judge
_____
*Printed name and title*

AO 93C  (08/18)  Warrant by Telephone or Other Reliable Electronic Means            ☐ Original            ☐ Duplicate Original

# UNITED STATES DISTRICT COURT
### for the
### District of Columbia

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched* | ) |
| *or identify the person by name and address)* | )    Case No.  20-sc-839 |
| INFORMATION ASSOCIATED WITH APPLE ID | ) |
| TIPTJD@GMAIL.COM; | ) |
| THAT IS STORED AT PREMISES CONTROLLED BY APPLE INC., | ) |
| PURSUANT TO 18 U.S.C. 2703 AND 3512 | ) |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____Northern_____ District of _____California_____
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A incorporated herein and included as part of this Application for a Search Warrant.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B incorporated herein and included as part of the attached Affidavit.

**YOU ARE COMMANDED** to execute this warrant on or before _____April 30, 2020_____ *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m.   ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____Deborah A. Robinson_____ .
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)*   ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued: _____04/17/2020_____       _____
                                                       *Judge's signature*

City and state: _____Washington, DC_____       Deborah A. Robinson, U.S. Magistrate Judge
                                                         *Printed name and title*

AO 93C  (08/18) Warrant by Telephone or Other Reliable Electronic Means (Page 2)

| **Return** | | |
|---|---|---|
| Case No.:<br>  20-sc-839 | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : | | |
| Inventory of the property taken and name(s) of any person(s) seized: | | |

| **Certification** |
|---|

      I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.


Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH APPLE ID TIPJD@GMAIL.COM; THAT IS STORED AT PREMISES CONTROLLED BY APPLE INC., PURSUANT TO 18 U.S.C. 2703 AND 3512 | SC No. 20-839 |

## AMENDED AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE

I, Alix Skelton, a Special Agent with the Federal Bureau of Investigation (FBI),

Washington Field Office, Washington, D.C., being duly sworn, depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.      I am a Special Agent with the Federal Bureau of Investigation ("FBI"), duly

appointed according to law and acting as such. I have been so employed by the FBI since 2011.

Currently, I am assigned to the Washington Field Office ("WFO"), where I am responsible for

conducting and assisting in investigations involving child pornography, the sexual exploitation of

children, and human trafficking. I have gained experience through training with the FBI and in

your affiant's everyday work related to conducting these types of investigations. During your

affiant's career as an FBI agent, I have (a) conducted physical and wire surveillance; (b) led and

participated in the execution of search warrants and arrest warrants for various crimes; (c)

reviewed and analyzed numerous recorded conversations and other documentation of criminal

activity; (d) debriefed cooperating defendants and confidential human sources; (e) monitored

wiretapped conversations; and (f) conducted physical surveillance of individuals engaged in

various crimes. Moreover, I am a federal law enforcement officer who is engaged in enforcing

the criminal laws, including child pornography offenses in violation of Title 18, United States

1

Code, Sections 2251 and 2252, and 2252A. As a Federal Agent, I am authorized to investigate violations of United States laws and to execute warrants issued under the authority of the United States.

2.      I make this affidavit in support of an application for a search warrant for all information associated with the account associated with Apple ID "tiptjd@gmail.com" (hereinafter the TARGET ACCOUNT) that is stored at premises owned, maintained, controlled or operated by Apple, Inc. (hereinafter "Apple"), located at 1 Infinite Loop, M/S 36 -SU, Cupertino, California, 95014.  The information to be searched is described in the following paragraphs and in Attachment A.  This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Apple to disclose to the government copies of the information (including the content of communications) further described in Section I of Attachment B.  Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B, using the procedures described in Section III of Attachment B.

3.      I am familiar with the information contained in this Affidavit based upon the investigation I have conducted, which includes conversations with law enforcement officers and others and review of reports and database records.

4.      Because I submit this Affidavit for the limited purpose of securing a search warrant, I have not included each and every fact known to me or the government. I have included only those facts necessary to establish probable cause to believe that evidence of violations of Title 18, United States Code, Sections 2251(a), 2252(a), and 2252A is located in the subject account.

## STATUTORY AUTHORITY

5.      Title 18, United States Code, Section 2251(a) prohibits employing, using, persuading, inducing, enticing, or coercing any minor to engage in, or having a minor assist any other person to engage in, or transporting any minor in or affecting interstate or foreign commerce with the intent that such minor engage in, any sexually explicit conduct for the purpose of producing any visual depiction of such conduct or for the purpose of transmitting a live visual depiction of such conduct, if such person knows or has reason to know that such visual depiction will be transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed; or if that visual depiction was produced or transmitted using materials that have been mailed, shipped, or transported in or affecting interstate or foreign commerce by any means, including by computer; or if such visual depiction has actually been transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed; or attempting or conspiring to do so.

6.      Title 18, United States Code, Section 2252(a)(2) prohibits the knowing receipt or distribution of any visual depiction of minors engaging in sexually explicit conduct that has been mailed or shipped or transported in or affecting interstate or foreign commerce, by any means, including by computer.

7.      Title 18, United States Code, Section 2252A(a)(2)(A) prohibit a person from knowingly receiving or distributing, or attempting or conspiring to receive or distribute, any child pornography or any material that contains child pornography, as defined in 18 U.S.C. § 2256(8), that has been mailed, or using any means or facility of interstate or foreign commerce shipped or transported in or affecting interstate or foreign commerce by any means, including by

computer. Section 2252A(a)(3) further prohibits a person from knowingly advertising, promoting, presenting, distributing, or soliciting through the mails, or using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce by any means, including by computer ,any material or purported material in a manner that reflects the belief, or that is intended to cause another to believe, that the material or purported material is, or contains—(i) an obscene visual depiction of a minor engaging in sexually explicit conduct; or (ii) a visual depiction of an actual minor engaging in sexually explicit conduct.

8.      Title 18, United States Code, Section 2256(1) defines "minor" as any person under the age of eighteen years.

9.      Title 18, United States Code, Section 2256(8) defines "Child Pornography" in relevant part as "any visual depiction, including any photograph, film, video, picture, or computer or computer-generated image or picture, whether made or produced by electronic, mechanical, or other means, of sexually explicit conduct, where – (A) the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct."

10.     Title 18, United States Code, Section 2256(2) defines "sexually explicit conduct" as actual or simulated: (i) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex; (ii) bestiality; (iii) masturbation; (iv) sadistic or masochistic abuse; or (v) lascivious exhibition of the genitals or pubic area of any person.

## **DEFINITIONS**

11.     Based on your affiant's training and experience, and information acquired from other law enforcement officials with technical expertise, your affiant knows the terms described below have the following meanings or characteristics:

4

a.      "Cache" means the text, image, and graphic files sent to and temporarily stored by a user's computer from a website accessed by the user in order to allow the user speedier access to and interaction with that website.

b.      "Child erotica," as used in this application, means materials or items that are sexually arousing to persons having a sexual interest in minors but that are not, in and of themselves, obscene or that do not necessarily depict minors engaging in sexually explicit conduct.

c.      "Computer," as defined in 18 U.S.C. § 1030(e)(1), means "an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical, arithmetic, or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device."

d.      "Computer hardware," as used in this application, means all equipment that can receive, capture, collect, analyze, create, display, convert, store, conceal, or transmit electronic, magnetic, or similar computer impulses or data. Computer hardware includes any data-processing devices (including, but not limited to, central processing units, internal and peripheral storage devices such as fixed disks, external hard drives, floppy disk drives and diskettes, and other memory storage devices); peripheral input/output devices (including, but not limited to, keyboards, printers, video display monitors, modems, routers, scanners and related communications devices such as cables and connections), as well as any devices, mechanisms, or parts that can be used to restrict access to computer hardware (including, but not limited to, physical keys and locks).

e.      "Internet Protocol address" or "IP address," as used in this application, is a unique numeric address used by computers on the Internet. An IP address is a series of four

5

numbers separated by periods (e.g., 121.56.97.178) or a series of eight blocks separated by colons (e.g., 2001:0db8:0000:0042:0000:8a2e:0370:7334). Every computer attached to the Internet must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses. ISPs typically maintain logs of the subscribers to whom IP addresses are assigned on particular dates and times.

## JURISDICTION

12.     This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711.  18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A).  Specifically, the Court is "a district court of the United States . . . that – has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).  As described in detail below, some of the acts and conduct under investigation were accessible in, and received in, the District of Columbia.

## INVESTIGATION AND IDENTIFICATION OF TIPTON

13.     On Monday March 9, 2019, a FBI WFO task force officer was acting in an undercover capacity (the "UC") as part of the Metropolitan Police Department-Federal Bureau of Investigation ("MPD-FBI") Child Exploitation Task Force, operating out of a satellite office in Washington, D.C. In that capacity, the UC posted numerous online bulletin messages on a specific social media forum[1] known to the UC as a website where users meet to discuss and trade

---

1 The true name of this forum/website is known to law enforcement. It is being

child pornography and child erotica, among other things. This site is forum-based and offers

users an internal email through which they can communicate with other users. Users can start a

conversation thread and title the topic for all users to view. Users can respond to the thread for

all users to see.

14.     Leading up to March 9, 2020 the UC commented on various posts that were

started by other users. The UC indicated the he was a 33 year-old father with a daughter. On

March 9, 2020, the UC posted an advertisement stating that he was a father in the Washington,

DC/Virginia area looking to contact other dads close by who were into, *inter alia*, family,

daughter, and young sister things, making clear it was a sexual interest. The UC left his Kik

screen name in each post that he commented on or posted.[2]

15.     On Monday, March 9, 2020, an individual using the Kik name "tiptjd" with a

display name of "JT," later identified as JASON DAVID TIPTON (herein "TIPTON"), sent a

private Kik message to the UC stating, "Im in VA." TIPTON stated that he was a 35 year-old

father with a 6 year-old daughter. The following is a portion of the text exchange:

| |
|---|
| UC: What all u get into |
| TIPTON: You tell me |
| UC: I'm taboo no limits |
| UC: Where u find me |
| TIPTON: [referred to the specific social media forum/website |

anonymized to protect ongoing investigations.

2 Kik is an instant messaging mobile application where one can transmit and receive
messages, photos, and videos. Users can communicate privately with other users or in groups.

7

| |
|---|
| noted above] |
| UC: Cool, you spy on your girl and play? |
| TIPTON: A lot you? |
| UC: Yes mostly when she is asleep |
| UC: What about u |
| TIPTON: Can I see |
| UC: Yeah |
| UC: What do you have of yours |
| TIPTON: A lot |
| UC: Ok is she home now? |
| TIPTON: Nope. You |
| UC: Not right now. Can you hold up 3 fingers on front of her panties so I know your real |
| UC: [Sends an image of himself holding up 3 fingers near a pair of children's underwear] |
| TIPTON: [Sends an image of himself holding up 3 fingers in front of a pair of children's Super Man underwear] |

16.     During the course of the chat, the UC sent TIPTON a clothed image of his purported daughter.[3] The image depicted the side of the purported child's head and shoulder area. TIPTON responded, "Show skin". TIPTON sent the UC an image of a prepubescent child

_____

3 The images the UC sent to TIPTON did not depict a real child.

8

sitting with her legs crossed. The child's face was not visible, but she is wearing a black shirt with a roller skate design on the front of the shirt. Pieces of a puzzle can be seen next to the child's leg. During the course of the chat, TIPTON asked the UC about his experience with his daughter. The following is a portion of that chat exchange:

| |
|---|
| TIPTON: What all have you done |
| UC: Touch her when she is asleep and jerk on her stuff like that |
| UC: What about u |
| TIPTON: Same. And give baths and wash it all |
| UC: Nice! |
| TIPTON: It is |
| TIPTON: Well |
| UC: Waiting for you |
| UC: I sent first last time |
| TIPTON: [Sends a grainy image of what appears to be a prepubescent girl wearing a white T Shirt and a pink bottom.] |

17.     After sending this image, TIPTON again asked the UC to send an image "showing skin." The UC did not send any additional images to TIPTON, who was still using the screen name "tiptjd."

18.     On March 9, 2020 the UC recorded the chat logs and learned that shortly after this chat session, TIPTON's Kik account was shut down. It is unknown whether this account was shut down by TIPTON or Kik.

19.     On March 12, 2020, the UC received a message from an individual using the Kik screen name "tiptjd1" with a display name of "J T" later identified as TIPTON. "Tiptjd1" sent

9

the UC a private KIK message stating, "Hey." The UC responded, "Hey ASL," (a slang

abbreviation meaning age, sex, location). On March 13, 2020, TIPTON responded, "I'm in dc.

You?" During the course of the chat TIPTON stated that he was 31 years of age residing in

Alexandria, Virginia with a 7 year-old daughter. The following is a portion of the chat exchange

as it relates to TIPTON's daughter:

| |
|---|
| TIPTON: Got some reveal pics? |
| UC: I have a few? |
| UC: Is yours with you now? |
| TIPTON: I have pics. She isn't here |
| UC: Ok cool, I can verify that mine are original. Are you home too |
| UC: [Sends an image of his purported daughter lying on a pillow. The photo depicts the purported child's neck area. The UC followed up by sending a live image pointing a finger near the same pillow.] |
| UC: Here is a live of same pillow she on |
| TIPTON: That ain't revealing lol |
| UC: I have them I just want to know that yours are original and not something from the net lol. |
| UC: Do you have a way of proving |
| TIPTON: What do you want? |
| UC: What u have |
| UC: Any way that u can show original |
| UC: U leave |

20.     TIPTON then sent the UC two images. The first image depicts what appears to be

a prepubescent child lying on top of a character bed sheet. Her face was not exposed and the

child was wearing a black T shirt. The second image depicted an individual pointing a finger near the same bed sheet described above.

21.     The UC then sent an image of the chest area of his purported child (as noted above, not a real person). TIPTON stated, "Ever lick it."

22.     TIPTON sent an image of the stomach and chest region of a prepubescent child. The child's face was not visible, but the photo depicted the child's bare breast.

23.     The UC sent an image of his purported daughter. The image depicted the child's stomach and underwear region. TIPTON responded, "Show her pussy." Later in the chat, TIPTON stated, "I got a pussy pic do you." TIPTON sent the UC an image depicting a male pulling a prepubescent child's underpants to the side and pressing his penis against her unclothed genitalia.  The penis depicted in this image appears to be uncircumcised.4   The picture focused on the child's genitalia and did not depict her face. The underwear the child is wearing appear to be white in color with orange trim.

24.     TIPTON had no more contact with the UC after sending this image. TIPTON'S Kik account was subsequently shut down. It is unknown whether this account was shut down by TIPTON or Kik.

25.     Administrative subpoenas were served on Kik c/o MediaLab requesting subscriber identification and IP access logs associated with usernames tiptjd and tiptjd1. For the account tiptjd, Kik's response provided a display name of "J t", a confirmed email address of tiptjd@gmail.com, the device description was listed as an iPhone, and IP logs spanning March

8

---

4  Based upon interviews conducted during the course of this ongoing investigation, your affiant has learned that TIPTON was never circumcised.

through 9, 2020. For the account tiptjd1, Kik's response provided a display name of "J T", an unconfirmed email address of tiptjd4886@gmail.com, the device description was listed as an iPhone, and IP logs spanning March 12 through 13, 2020. Examination of the logs for both accounts yielded a single Verizon FIOS IP address (71.191.74.71) used to access the target accounts.

26.     An administrative subpoena was served on Verizon requesting subscriber identification and physical service address information associated with the aforementioned IP address. Verizon's response identified the subscriber as Jason Tipton, with the service address 9283 Potomac Loop, Fort Belvoir Virginia 22060, daytime telephone number 727-412-3478, evening telephone number 727-667-9280, and email address tiptjd@gmail.com.

27.     Upon receipt of this information, FBI Washington Field Office used available open source, commercial (*e.g.*, Accurint), and law enforcement sensitive (*e.g.*, NCIC, Department of Motor Vehicles) databases to fully identify the suspected user of Kik account tiptjd1 as Jason David Tipton of 9283 Potomac Loop, Fort Belvoir Virginia 22060. TIPTON has no identifiable criminal history. U.S. Army Criminal Investigation Division ("CID") at Fort Belvoir confirmed that TIPTON's address of record is 9283 Potomac Loop, Fort Belvoir Virginia.

28.     On March 30, 2020, your affiant conducted surveillance on the 9283 Potomac Loop, Fort Belvoir Virginia. Your affiant observed a grey Chevrolet SUV, bearing Virginia license plate USM-8111 in the driveway of the residence. This vehicle is registered to JASON and SARA TIPTON, who reside at 9283 Potomac Loop, Fort Belvoir Virginia.

29.     On April 1, 2020, the Hon. Theresa Buchanan, United States Magistrate Judge for the Eastern District of Virginia, at Alexandria, authorized a search warrant for the residence at

12

9283 Potomac Loop, Ft. Belvoir, Virginia and the person of JASON TIPTON. Also on April 1,

2020, this Court authorized an arrest warrant based on a criminal complaint for JASON

TIPTON, charging him with one count of Distribution of Child Pornography in violation of Title

18 United States Code, Section 2252(a)(2). Both the search warrants and arrest warrant were

executed by Agents and Task Force Officers of the FBI and Army CID on April 2, 2020.

30.     During the execution of the search warrant at 9283 Potomac Loop, Fort Belvoir

Virginia, items of clothing and bedding belonging to TIPTON's six year old daughter were

located and seized. TIPTON's wife was also interviewed by Agents during the search warrant

and she confirmed that the female child depicted in several of the nonpornographic images

distributed by TIPTON to the UC was their six year old daughter.

31.     TIPTON was arrested by your affiant and other law enforcement officers in the

hallway immediately outside his office, located at Fort Belvoir Community Hospital, 9300

DeWitt Loop, Fort Belvoir, Virginia. At the time of arrest, TIPTON advised your affiant that his

cellphone, an iPhone, and his iPad were on his desk inside his office. Your affiant did observe an

iPhone and an iPad in plain view on top of TIPTON's desk inside his office through the open

office door.  Both the iPhone and the iPad were seized at that time.

32.     Subsequent to his arrest, TIPTON was advised of his rights pursuant to *Miranda*

and voluntarily agreed to waive those rights and be interviewed by your affiant and an FBI Task

Force Officer. During his interview, TIPTON admitted to using the Kik accounts "tiptjd" and

"tiptjd1" to communicate with multiple individuals regarding the sexual abuse of children and to

receive and distribute child pornography.

33.     TIPTON specifically advised that the Kik application had been installed on his

iPhone and that he had used that device to communicate via the application, however he had

deleted his accounts because he "knew it was wrong." TIPTON also admitted to using the social media site referenced above in paragraph 13.

34.     On April 8, 2020 this Court authorized search warrants for the Apple iPad and Apple iPhone seized from TIPTON at the time of his arrest and referenced above in paragraph 31. Pursuant to that search warrant, as well as the search warrant authorized by Hon. Theresa Buchanan, United States Magistrate Judge for the Eastern District of Virginia referenced above in paragraph 29, forensic examinations of the devices were completed by a certified forensic examiner. As a result of those examinations, it was determined that two of the Apple devices utilized by TIPTON (the iPhone found in TIPTON's residence and the iPad found in TIPTON's office) were associated with the Apple ID tiptjd@gmail.com.  The Apple ID on the cellular telephone seized from TIPTON's office was not visible.  However, based upon your affiant's training and experience, individuals with multiple IOS devices commonly utilize the same Apple ID for the each of their devices – which is what TIPTON was doing with respect to at least two of his IOS devices.


35.     In her training and experience, your affiant is aware that users of Apple devices often backup the data on their devices to an Apple account associated with those devices. These backups are sometimes done passively, without any overt action by the user. Additionally, your affiant is aware that these backups are maintained by Apple, and may contain information, data, images, or actions performed by the user on an Apple device, even after this information is deleted from the device by the user.

36.     In her training and experience, your affiant is also aware that child exploitation offenders, including those who produce, possess, distribute and receive child pornography often

store child pornography in their possession in cloud accounts in an effort to evade law enforcement and to have access to their files from any location.

## BACKGROUND CONCERNING APPLE, INC.

37.     Apple is a United States company that produces the iPhone, iPad, and iPod Touch, all of which use the iOS operating system, and desktop and laptop computers based on the Mac OS operating system.

38.     Apple provides a variety of services that can be accessed from Apple devices or, in some cases, other devices via web browsers or mobile and desktop applications ("apps").  As described in further detail below, the services include email, instant messaging, and file storage:

      a.     Apple provides email service to its users through email addresses at the domain names mac.com, me.com, and icloud.com.

      b.     iMessage and FaceTime allow users of Apple devices to communicate in real-time.  iMessage enables users of Apple devices to exchange instant messages ("iMessages") containing text, photos, videos, locations, and contacts, while FaceTime enables those users to conduct video calls.

      c.     iCloud is a file hosting, storage, and sharing service provided by Apple. iCloud can be utilized through numerous iCloud-connected services, and can also be used to store iOS device backups and data associated with third-party apps.

      d.     iCloud-connected services allow users to create, store, access, share, and synchronize data on Apple devices or via icloud.com on any Internet-connected device. For example, iCloud Mail enables a user to access Apple-provided email accounts on multiple Apple devices and on icloud.com.  iCloud Photo Library and My Photo Stream can be used to store and manage images and videos taken from Apple devices, and

15

iCloud Photo Sharing allows the user to share those images and videos with other Apple subscribers.  iCloud Drive can be used to store presentations, spreadsheets, and other documents.  iCloud Tabs and bookmarks enable iCloud to be used to synchronize bookmarks and webpages opened in the Safari web browsers on all of the user's Apple devices.  iWork Apps, a suite of productivity apps (Pages, Numbers, Keynote, and Notes), enables iCloud to be used to create, store, and share documents, spreadsheets, and presentations.  iCloud Keychain enables a user to keep website username and passwords, credit card information, and Wi-Fi network information synchronized across multiple Apple devices.

e.      Game Center, Apple's social gaming network, allows users of Apple devices to play and share games with each other.

f.      Find My iPhone allows owners of Apple devices to remotely identify and track the location of, display a message on, and wipe the contents of those devices.  Find My Friends allows owners of Apple devices to share locations.

g.      Location Services allows apps and websites to use information from cellular, Wi-Fi, Global Positioning System ("GPS") networks, and Bluetooth, to determine a user's approximate location.

h.      App Store and iTunes Store are used to purchase and download digital content.  iOS apps can be purchased and downloaded through App Store on iOS devices, or through iTunes Store on desktop and laptop computers running either Microsoft Windows or Mac OS.  Additional digital content, including music, movies, and television shows, can be purchased through iTunes Store on iOS devices and on desktop and laptop computers running either Microsoft Windows or Mac OS.

16

39.     Apple services are accessed through the use of an "Apple ID," an account created during the setup of an Apple device or through the iTunes or iCloud services.  A single Apple ID can be linked to multiple Apple services and devices, serving as a central authentication and syncing mechanism.

40.     An Apple ID takes the form of the full email address submitted by the user to create the account; it can later be changed.  Users can submit an Apple-provided email address (often ending in @icloud.com, @me.com, or @mac.com) or an email address associated with a third-party email provider (such as Gmail, Yahoo, or Hotmail).  The Apple ID can be used to access most Apple services (including iCloud, iMessage, and FaceTime) only after the user accesses and responds to a "verification email" sent by Apple to that "primary" email address. Additional email addresses ("alternate," "rescue," and "notification" email addresses) can also be associated with an Apple ID by the user.

41.     Apple captures information associated with the creation and use of an Apple ID. During the creation of an Apple ID, the user must provide basic personal information including the user's full name, physical address, and telephone numbers.  The user may also provide means of payment for products offered by Apple.  The subscriber information and password associated with an Apple ID can be changed by the user through the "My Apple ID" and "iForgot" pages on Apple's website.  In addition, Apple captures the date on which the account was created, the length of service, records of log-in times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to and utilize the account, the Internet Protocol address ("IP address") used to register and access the account, and other log files that reflect usage of the account.

42.     Additional information is captured by Apple in connection with the use of an Apple ID to access certain services.  For example, Apple maintains connection logs with IP addresses that reflect a user's sign-on activity for Apple services such as iTunes Store and App Store, iCloud, Game Center, and the My Apple ID and iForgot pages on Apple's website.  Apple also maintains records reflecting a user's app purchases from App Store and iTunes Store, "call invitation logs" for FaceTime calls, "query logs" for iMessage, and "mail logs" for activity over an Apple-provided email account.  Records relating to the use of the Find My iPhone service, including connection logs and requests to remotely lock or erase a device, are also maintained by Apple.

43.     Apple also maintains information about the devices associated with an Apple ID. When a user activates or upgrades an iOS device, Apple captures and retains the user's IP address and identifiers such as the Integrated Circuit Card ID number ("ICCID"), which is the serial number of the device's SIM card.  Similarly, the telephone number of a user's iPhone is linked to an Apple ID when the user signs in to FaceTime or iMessage.  Apple also may maintain records of other device identifiers, including the Media Access Control address ("MAC address"), the unique device identifier ("UDID"), and the serial number.  In addition, information about a user's computer is captured when iTunes is used on that computer to play content associated with an Apple ID, and information about a user's web browser may be captured when used to access services through icloud.com and apple.com.  Apple also retains records related to communications between users and Apple customer service, including communications regarding a particular Apple device or service, and the repair history for a device.

18

44.     Apple provides users with five gigabytes of free electronic space on iCloud, and users can purchase additional storage space.  That storage space, located on servers controlled by Apple, may contain data associated with the use of iCloud-connected services, including: email (iCloud Mail); images and videos (iCloud Photo Library, My Photo Stream, and iCloud Photo Sharing); documents, spreadsheets, presentations, and other files (iWork and iCloud Drive); and web browser settings and Wi-Fi network information (iCloud Tabs and iCloud Keychain). iCloud can also be used to store iOS device backups, which can contain a user's photos and videos, iMessages, Short Message Service ("SMS") and Multimedia Messaging Service ("MMS") messages, voicemail messages, call history, contacts, calendar events, reminders, notes, app data and settings, Apple Watch backups, and other data.  Records and data associated with third-party apps may also be stored on iCloud; for example, the iOS app for WhatsApp, an instant messaging service, can be configured to regularly back up a user's instant messages on iCloud Drive.  Some of this data is stored on Apple's servers in an encrypted form but can nonetheless be decrypted by Apple.

45.      In your affiant's training and experience, evidence of who was using an Apple ID and from where, and evidence related to criminal activity of the kind described above, may be found in the files and records described above.  This evidence may establish the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or, alternatively, to exclude the innocent from further suspicion.

46.     For example, the stored communications and files connected to an Apple ID may provide direct evidence of the possession, distribution, production, and receipt of child pornography.  Based on your affiant's training and experience, instant messages, emails,

voicemails, photos, videos, and documents are often created and used in furtherance of criminal

activity, including to communicate and facilitate the possession, distribution, production, and

receipt of child pornography.

47.     In addition, the user's account activity, logs, stored electronic communications,

and other data retained by Apple can indicate who has used or controlled the account.  This "user

attribution" evidence is analogous to the search for "indicia of occupancy" while executing a

search warrant at a residence.  For example, subscriber information, email and messaging logs,

documents, and photos and videos (and the data associated with the foregoing, such as geo-

location, date and time) may be evidence of who used or controlled the account at a relevant

time.  As an example, because every device has unique hardware and software identifiers, and

because every device that connects to the Internet must use an IP address, IP address and device

identifier information can help to identify which computers or other devices were used to access

the account.  Such information also allows investigators to understand the geographic and

chronological context of access, use, and events relating to the possession, distribution,

production, and receipt of child pornography.

48.     Account activity may also provide relevant insight into the account owner's state

of mind as it relates to the offenses under investigation.  For example, information on the account

may indicate the owner's motive and intent to commit a crime (e.g., information indicating a

plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort

to conceal evidence from law enforcement).

49.     Other information connected to an Apple ID may lead to the discovery of

additional evidence.  For example, the identification of apps downloaded from App Store and

iTunes Store, specifically Kik Messenger, may reveal services used in furtherance of the crimes

under investigation or services used to communicate with co-conspirators.  In addition, emails, instant messages, Internet activity, documents, and contact and calendar information can lead to the identification of co-conspirators and instrumentalities of the crimes under investigation.

50.     Therefore, Apple's servers are likely to contain stored electronic communications and information concerning subscribers and their use of Apple's services.  In my training and experience, such information may constitute evidence of the crimes under investigation including information that can be used to identify the account's user or users.

**INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED**

51.     I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), (b)(1)(A) and (c)(1)(A), by using the warrant to require Apple to disclose to the government copies of the records and other information (including the content of communications) particularly described in Attachment B.

//

//

//

//

//

//

//

//

//

//

//

21

## **CONCLUSION**

52.    Based on the forgoing, I request the Court issue the proposed search warrant. Because the warrant will be served on Apple who will then compile the requested records at a time convenient to it, there exists reasonable cause to permit the execution of the requested warrant at any time in the day or night.

Respectfully submitted,

Ally Skelton
Special Agent
Federal Bureau of Investigation

Subscribed and sworn telephonically pursuant to Fed. R. Crim. P. 4.1 and 41(d)(3) to before me this 17th day of April, 2020.

_____
HONORABLE DEBORAH A. ROBINSON,
UNITED STATES MAGISTRATE JUDGE

22

## **ATTACHMENT A**

*Property to be searched*

The account, information about the account, and all content associated with Apple ID "tiptjd@gmail.com" (the TARGET ACCOUNT) which is in the possession or under the control of Apple, Inc., whose office is located at 1 Infinite Loop, M/S 36 -SU, Cupertino, California, 95014 (hereinafter and in Attachment B "Provider").

## ATTACHMENT B

**I.     INFORMATION TO BE DISCLOSED BY APPLE, INC**

To the extent that the information described in Attachment A is within the possession, custody, or control of Apple, regardless of whether such information is located within or outside of the United States, including any messages, records, files, logs, or information that have been deleted but are still available to Apple, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Apple is required to disclose the following information to the government, in unencrypted form whenever available, for each account or identifier listed in Attachment A:

a)     All records or other information regarding the identification of the account, to include full name, physical address, telephone numbers, email addresses (including primary, alternate, rescue, and notification email addresses, and verification information for each email address), the date on which the account was created, the length of service, the IP address used to register the account, account status, associated devices, methods of connecting, and means and source of payment (including any credit or bank account numbers);

b)     All records or other information regarding the devices associated with, or used in connection with, the account (including all current and past trusted or authorized iOS devices and computers, and any devices used to access Apple services), including serial numbers, Unique Device Identifiers ("UDID"), Advertising Identifiers ("IDFA"), Global Unique Identifiers ("GUID"), Media Access Control ("MAC") addresses, Integrated Circuit Card ID numbers ("ICCID"), Electronic

Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifiers ("MEID"), Mobile Identification Numbers ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Numbers ("MSISDN"), International Mobile Subscriber Identities ("IMSI"), and International Mobile Station Equipment Identities ("IMEI");

c)      The contents of all emails associated with the account, including stored or preserved copies of emails sent to and from the account (including all draft emails and deleted emails), the source and destination addresses associated with each email, the date and time at which each email was sent, the size and length of each email, and the true and accurate header information including the actual IP addresses of the sender and the recipient of the emails, and all attachments;

d)      The contents of all instant messages associated with the account, including stored or preserved copies of instant messages (including iMessages, SMS messages, and MMS messages) sent to and from the account (including all draft and deleted messages), the source and destination account or phone number associated with each instant message, the date and time at which each instant message was sent, the size and length of each instant message, the actual IP addresses of the sender and the recipient of each instant message, and the media, if any, attached to each instant message;

e)      The contents of all files and other records stored on iCloud, including all iOS device backups, all Apple and third-party app data, all files and other records related to iCloud Mail, iCloud Photo Sharing, My Photo Stream, iCloud Photo Library,

25

iCloud Drive, iWork (including Pages, Numbers, Keynote, and Notes), iCloud Tabs and bookmarks, and iCloud Keychain, and all address books, contact and buddy lists, notes, reminders, calendar entries, images, videos, voicemails, device settings, and bookmarks;

f)     All activity, connection, and transactional logs for the account (with associated IP addresses including source port numbers), including FaceTime call invitation logs, messaging and query logs (including iMessage, SMS, and MMS messages), mail logs, iCloud logs, iTunes Store and App Store logs (including purchases, downloads, and updates of Apple and third-party apps), My Apple ID and iForgot logs, sign-on logs for all Apple services, Game Center logs, Find My iPhone and Find My Friends logs, logs associated with web-based access of Apple services (including all associated identifiers), and logs associated with iOS device purchase, activation, and upgrades;

g)     All records and information regarding locations where the account or devices associated with the account were accessed, including all data stored in connection with Location Services, Find My iPhone, Find My Friends, and Apple Maps;

h)     All records pertaining to the types of service used;

i)     All records pertaining to communications between Apple and any person regarding the account, including contacts with support services and records of actions taken; and

j)     All files, keys, or other information necessary to decrypt any data produced in an encrypted form, when available to Apple (including, but not limited to, the keybag.txt and fileinfolist.txt files).

26

Apple is hereby ordered to disclose the above information to the government within 14 days of issuance of this warrant.

## II.  INFORMATION TO BE SEIZED BY GOVERNMENT

All information described above in Section I that constitutes fruits, evidence and instrumentalities of violations of Title 18, United States Code, §§ 2251, 2252 and 2252A in relation to the account associated with Apple ID  "tiptjd@gmail.com" (the TARGET ACCOUNT), including information pertaining to the following matters:

a.  Records relating to Jason Tipton utilizing the account associated with the TARGET ACCOUNT, including communications related to the possession, receipt, production, solicitation, advertisement, or distribution of child pornography; or

b.  Evidence of the possession, receipt, production, solicitation, advertisement, or distribution of child pornography; or

c.  The identity of the person(s) who created or used the TARGET ACCOUNT, including records that help reveal the whereabouts of such person(s);

d.  Evidence indicating how and when the TARGET ACCOUNT was accessed or used, to determine the chronological and geographic context of account access, use and events relating to the crime under investigation and the account subscriber;

e.  Any records pertaining to the means and source of payment for services (including any credit card or bank account number or digital money transfer account information);

27

    f.   Evidence indicating the subscriber's state of mind as it relates to the crime under investigation; and

    g.   Evidence that may identify any co-conspirators or aiders and abettors, including records that help reveal their whereabouts.

## III.   GOVERNMENT PROCEDURES FOR EXECUTING THE WARRANT

The United States government will conduct a search of the information produced by Apple and determine which information is within the scope of the information to be seized specified in Section II.  That information that is within the scope of Section II may be copied and retained by the United States.

Law enforcement personnel will then seal any information from Apple that does not fall within the scope of Section II and will not further review the information absent an order of the Court. Such sealed information may include retaining a digital copy of all information received pursuant to the warrant to be used for authentication at trial, as needed.

## IV.   METHOD OF DELIVERY

Items seized pursuant to this search warrant should be served by sending all electronic information in its original electronic form, on any digital media device, via US Postal Service or another delivery service – notwithstanding 18 U.S.C. §§ 2251, 2252, and 2252A, or similar statues or codes – to the FBI Northern Virginia Resident Agency, c/o SA Alix Skelton, CR-18, at 9325 Discovery Blvd, Manassas, VA 20109.